UNITED STATES of America, Appellee,

v.

Elpidio G. SANTOS, also known as Indio, and Victor Alejo, Defendants– Appellants,

Juan Garcia, Defendant.

Nos. 1881, 1882, Dockets 94–1602(L), 94–1618.

United States Court of Appeals, Second Circuit.

Argued June 28, 1995.

Decided July 28, 1995.

Christine E. Yaris, New York City, for defendant-appellant Elpidio G. Santos.

Juan A. Campos, New York City, for defendant-appellant Victor Alejo.

David C. Esseks, Asst. U.S. Atty., New York City (Mary Jo White, U.S. Atty., Alexandra Rebay, Asst. U.S. Atty., for the S.D.N.Y., New York City, of counsel), for appellee.

Before VAN GRAAFEILAND, JACOBS, and CABRANES, Circuit Judges.

JACOBS, Circuit Judge:

Defendants-appellants Elpidio Gerardo Santos and Victor Alejo challenge their conviction and sentencing for use of a firearm equipped with a silencer during and in relation to a drug trafficking crime, pursuant to 18 U.S.C. § 924(c)(1). They argue that the evidence was insufficient to show beyond a reasonable doubt that the silenced firearm, which was in a paper bag stowed in an oven drawer, was "used" in the drug transaction for which they were convicted; that the thirty-year sentence specified in the statute—mandatory and consecutive—violates the Eighth Amendment; and that the statute is vague and offends due process. We affirm.

## BACKGROUND

The judgments of conviction were entered in the United States District Court for the Southern District of New York (Haight, J.). Each defendant was found guilty, following a jury trial, of one count of conspiracy to distribute, and to possess with intent to distribute, cocaine in violation of 21 U.S.C. § 846; one count of distributing, and possessing with intent to distribute, cocaine within 1000 feet of a school, in violation of 21 U.S.C. §§ 841(b)(1)(B) and 860 and 18 U.S.C. § 2; and one count of using and carrying firearms during and in relation to a drug trafficking offense, in violation of 18 U.S.C. §§ 2 and 924(c). The district court sentenced each defendant principally to seventy months' imprisonment on the conspiracy and substantive possession counts and to the consecutive term of thirty years' imprisonment mandated on the firearms count. Both defendants are currently serving their sentences.

Santos and Alejo operated a cocaine distribution center in an apartment on West 188th Street in New York City. In June 1991 the Drug Enforcement Agency ("DEA") enlisted a confidential informant to make a two-kilogram cocaine purchase from the defendants. The informant conducted inconclusive negotiations with Santos on a street corner in the vicinity of the apartment. Later that month, the informant met with Santos again on the same street corner. This encounter was interrupted by two other men who approached Santos about another two-kilogram deal. The informant tagged along as Santos and the two men went up to the apartment, where Alejo and another individual were counting money. Santos retrieved two kilograms of cocaine from another room and, after some discussion of quality and an exchange of the goods for two other kilograms, the two men accepted the cocaine, paid for it, and carried it from the apartment. Santos then told the informant that they should discuss their own deal later.

On August 13, 1991, the informant telephoned Santos, who invited the informant to see him. The informant, accompanied by another DEA informant posing as a buyer, went to the address of the upper Manhattan

apartment, where they encountered Santos and Alejo on the street. The informant told Santos that his colleague was ready to purchase the two kilograms they had discussed, and made the usual introductions. Santos told them that he was expecting a delivery of cocaine shortly. The courier arrived shortly thereafter and went upstairs with Alejo. Santos and the purported buyer followed; when they arrived, Alejo was talking on the telephone, holding a firearm in his hand, and the courier was sitting next to a coffee table on which was placed a single kilogram of cocaine. After an inspection of the single kilogram, Santos and the buyer left the apartment with the courier, ostensibly so that the buyer could get the purchase money. DEA agents arrested Santos and the courier in the hallway. Alejo was apprehended shortly after, having climbed out a window, broken into the apartment above, and attempted to escape down the stairway.

The agents entered the apartment pursuant to a previously issued search warrant, and found the single kilogram of cocaine on the living room coffee table, together with a loaded 9mm semiautomatic handgun; a second 9mm handgun next to an open window in the living room; a .38 caliber revolver loaded with hollow point bullets on the top shelf of the living room closet; another loaded firearm, $21,000 in cash and several small packets of cocaine in the bedroom; as well as scales, razor blades, packaging materials, sales records, and other paraphernalia.

When the agents looked in the broiler drawer of the oven, they found a second kilogram of cocaine. Just above the cocaine was a .22 caliber firearm equipped with a silencer. This gun, loaded and ready to fire, was wrapped in brown paper and had been put in the oven with the grip toward the front of the broiler drawer. DEA Special Agent Don Bullard noted at trial that the gun did not have to be unwrapped to be fired: "All you had to do was stick your finger through the bag and it was ready to go."

The district court denied the defendants' motion, at the close of the government's case, for a judgment of acquittal on the 924(c) firearms count in respect of the silencer-equipped gun. The defense rested without putting on a case, and the jury returned a verdict of guilty on all counts. The defendants then renewed their challenge in respect of the silenced firearm, as well as previously raised Eighth Amendment and due process challenges to section 924(c)'s mandatory thirty-year sentence for the use of a silenced firearm in relation to a drug trafficking offense. In a thorough Memorandum Opinion and Order, the district court again denied all defense motions.

## DISCUSSION

### A. Sufficiency of Evidence

In respect of the silenced .22 caliber firearm, the defendants contend that the evidence adduced at trial was insufficient to establish that they "used" this firearm "in relation to" a drug trafficking offense. A defendant who challenges the sufficiency of evidence, following conviction by a jury, takes up a heavy burden. *See United States v. Gelzer*, 50 F.3d 1133, 1142 (2d Cir.1995). The appellate court considers the evidence in the light most favorable to the government, and must "credit[ ] all inferences and credibility assessments that the jury might have drawn in favor of the government." *United States v. Aulicino*, 44 F.3d 1102, 1114 (2d Cir.1995). Moreover, the verdict may be based entirely on circumstantial evidence, *United States v. Taylor*, 18 F.3d 55, 59 (2d Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 2720, 129 L.Ed.2d 845 (1994), and there is no requirement that the government demonstrate that it has disproved every possible theory inconsistent with guilt. *United States v. Sureff*, 15 F.3d 225, 228 (2d Cir.1994). In short, we must affirm the conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

The elements of a section 924(c) violation are (1) that the defendant "use[d] or carrie[d] a firearm," and (2) that such use or carrying of the firearm was "during and in relation to ... [a] drug trafficking crime." 18 U.S.C.

§ 924(c)(1). Defendants contend that neither of these elements was satisfied.

In respect of the "use" element, the government must adduce:

i) Proof of a transaction in which the circumstances surrounding the presence of a firearm suggest that the possessor of the firearm intended to have it available for possible use during the transaction; or

ii) The circumstances surrounding the presence of a firearm in a place where drug transactions take place suggest that it was strategically located so as to be quickly and easily available for use during such a transaction.

*United States v. Feliz–Cordero,* 859 F.2d 250, 254 (2d Cir.1988). In other words, " 'use' requires possession of a gun under circumstances where the weapon is so placed as to be an integral part of the offense." *United States v. Meggett,* 875 F.2d 24, 29 (2d Cir.), *cert. denied,* 493 U.S. 858, 110 S.Ct. 166, 107 L.Ed.2d 123 (1989).

■ Such use must be "during and in relation to" a drug trafficking offense. Defendants do not appeal their drug trafficking convictions and, therefore, the silenced gun—which was present in the oven during the commission of those offenses—was concededly possessed "during" a drug trafficking offense. As for the "in relation to" requirement, "the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence." *Smith v. United States,* —— U.S. ——, ——, 113 S.Ct. 2050, 2059, 124 L.Ed.2d 138 (1993). However, "[t]he phrase 'in relation to' is expansive," and if the firearm had even the potential to facilitate a drug trafficking crime we will affirm the conviction. *Smith,* —— U.S. at —— – ——, 113 S.Ct. at 2058–59.

■ In the light of this precedent, we have no trouble affirming these convictions. Defendants argue that the silenced firearm was merely being "stored" in the oven. However, we have never required that a firearm be outwardly brandished to sustain a conviction under section 924(c). The required nexus with a drug trafficking offense may be established by proof that would permit a jury to infer that the defendant intended to make use of a weapon should the need or opportunity arise. *See, e.g., United States v. Lindsay,* 985 F.2d 666, 672 (2d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 103, 126 L.Ed.2d 70 (1993). Particular circumstances will support an inference of use in relation to a drug trafficking offense even when the gun is in a closet, *see United States v. Fermin,* 32 F.3d 674, 678 (2d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1145, 130 L.Ed.2d 1104 (1995), or on a bedroom dresser, *see United States v. Medina,* 944 F.2d 60, 66–67 (2d Cir.1991), *cert. denied,* 503 U.S. 949, 112 S.Ct. 1508, 117 L.Ed.2d 646 (1992), or under a mattress, *see United States v. Torres,* 901 F.2d 205, 217–18 (2d Cir.), *cert. denied,* 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990), or even in a locked safe, *see United States v. Alvarado,* 882 F.2d 645, 654 (2d Cir.1989), *cert. denied,* 493 U.S. 1071, 110 S.Ct. 1114, 107 L.Ed.2d 1021 (1990).

In this case, the silenced firearm shared the broiler drawer with a kilogram of cocaine. Moreover, the deal arranged between the informant and Santos called for two kilograms; only one was on the living room table. A jury could infer that the kilogram in the oven—near the gun—was the second kilogram of this deal. Moreover, even though the gun was wrapped in paper, it was placed handle-out for ease of access (as the jury could infer), and was ready to fire: "All you had to do was stick your finger through the bag. . . ." We therefore affirm both defendants' section 924(c) convictions in respect of the silenced .22 caliber firearm.

**B.** *Eighth Amendment*

"[T]he Eighth Amendment prohibits imposition of a sentence that is grossly disproportionate to the severity of the crime." *Rummel v. Estelle,* 445 U.S. 263, 271, 100 S.Ct. 1133, 1138, 63 L.Ed.2d 382 (1980). "*Rummel* stands for the proposition that federal courts should be reluctan[t] to review legislatively mandated terms of imprisonment, and that successful challenges to the proportionality of particular sentences should be exceedingly rare." *Hutto v. Davis,* 454 U.S. 370, 374, 102 S.Ct. 703, 705, 70 L.Ed.2d 556 (1982) (per

curiam) (internal quotation marks and citation omitted).

"In view of the substantial deference that must be accorded legislatures and sentencing courts, a reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate." *Solem v. Helm*, 463 U.S. 277, 290 n. 16, 103 S.Ct. 3001, 3009 n. 16, 77 L.Ed.2d 637 (1983). Nevertheless, "as a matter of principle . . . a criminal sentence must be proportionate to the crime for which the defendant has been convicted." *Id.* at 290, 103 S.Ct. at 3009. In deciding the constitutionality of a sentence,

> a court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.

*Id.* at 292, 103 S.Ct. at 3011.[1]

■ Defendants argue that the mandatory thirty-year consecutive sentence of section 924(c) "will, in most cases, result in a *de facto* life sentence," because ordinarily the "relatively sophisticated offenders" who "have access to silencers" will already face substantial sentences on their underlying drug offenses. Defendants also advance the self-refuting argument that the challenged provision is disproportionate because it will have the severest impact on the most "sophisticated offenders." We have previously noted that "a silencer transforms an unmuffled gun into a far more threatening weapon." *United States v. Bakhtiari*, 913 F.2d 1053, 1062 (2d Cir.1990), *cert. denied*, 499 U.S. 924, 111 S.Ct. 1319, 113 L.Ed.2d 252 (1991). The only purpose of a silencer-equipped firearm is stealth—to kill without warning, commotion or detection. It adjusts the calculus of risks and rewards for the user in a way that makes the gun more dangerous to a potential victim. Viewed in this light, the decision of the Congress to multiply the sentence that would apply absent the silencer cannot be considered "grossly disproportionate" to the offense.

Courts have regularly rejected Eighth Amendment challenges to sentences in circumstances arguably more compelling than those presented here. *See, e.g., Harmelin v. Michigan*, 501 U.S. 957, 996, 111 S.Ct. 2680, 2702, 115 L.Ed.2d 836 (1991) (life without parole for possession of 672 grams of cocaine); *Hutto*, 454 U.S. at 372–73, 102 S.Ct. at 704–05 (forty-year sentence for possession with intent to distribute nine ounces of marijuana); *Rummel*, 445 U.S. at 285, 100 S.Ct. at 1145 (life sentence under state recidivist statute, where the three predicate offenses were fraudulent use of a credit card to obtain $80 worth of goods, passing a forged check in the amount of $28.36, and obtaining $120.75 by false pretenses); *United States v. Valdez*, 16 F.3d 1324, 1334 (2d Cir.) (life without parole for "merely middle-level drug dealers"), *cert. denied*, —— U.S. ——, 115 S.Ct. 60, 130 L.Ed.2d 18 (1994).

Nor does a disproportion appear when we compare the mandatory sentence for drug-trafficking use of a silenced firearm with other federal firearms provisions. Section 924(c) imposes the same mandatory thirty-year sentence if the drug trafficker employs a machine gun. An Eighth Amendment challenge to that provision was rejected by the Ninth Circuit. *See United States v. Martinez*, 967 F.2d 1343, 1348 (9th Cir.1992). We have upheld against an Eighth Amendment challenge the fifteen-year minimum penalty for individuals with three prior nar-

---

1. The government invites us to consider the viability of the three-part proportionality analysis of *Solem* in light of the plurality opinion in *Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). Although a parsing of the various concurring opinions in that case could support the conclusion that the second and third parts of *Solem* are no longer necessary, we have continued to apply *Solem* after *Harmelin*. *See United States v. Certain Real Property & Premises Known as 38 Whalers Cove Drive, Babylon,* *N.Y.*, 954 F.2d 29, 38–39 (2d Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 55, 121 L.Ed.2d 24 (1992). Because the outcome of this case would be the same regardless of which approach we take, we defer the resolution of this issue to another day. *See, e.g., Pinaud v. County of Suffolk*, 52 F.3d 1139, 1154 (2d Cir.1995) ("we think it is appropriate to await another case—one in which . . . the issue is necessarily determinative—to explore that case's effect" on this court's analysis).

cotics or violent felony convictions who are convicted of simple possession of a (non-silenced) firearm in or affecting commerce. *See United States v. Mitchell,* 932 F.2d 1027, 1028–29 (2d Cir.1991) (per curiam) (reviewing challenge to 18 U.S.C. § 924(e)); *accord United States v. Crittendon,* 883 F.2d 326, 331 (4th Cir.1989); *United States v. Gilliard,* 847 F.2d 21, 27 (1st Cir.1988), *cert. denied,* 488 U.S. 1033, 109 S.Ct. 846, 102 L.Ed.2d 978 (1989).

Finally, although no state has on its books a specific penalty for use of a silencer-equipped firearm during and in relation to a drug trafficking offense, a number of states punish the simple possession of a silencer with long imprisonment. *See* R.I. Gen. Laws § 11–47–20 (maximum life term); Cal. Penal Code § 12520 (same); Mont. Code Ann. § 45–8–336 (maximum thirty-year sentence); Ark. Code Ann. §§ 5–73–104, 5–4–401 (maximum twenty-year sentence). The discretionary character of the sentences allowed by these statutes does not impair the comparability of these state provisions: "There can be no serious contention ... that a sentence which is not otherwise cruel and unusual becomes so simply because it is 'mandatory.'" *Harmelin,* 501 U.S. at 995, 111 S.Ct. at 2701.

We have stated that the "Eighth Amendment condemns only punishment that shocks the collective conscience of society." *United States v. Gonzalez,* 922 F.2d 1044, 1053 (2d Cir.), *cert. denied,* 502 U.S. 1014, 112 S.Ct. 660, 116 L.Ed.2d 751 (1991). "[T]he excessiveness of one prison term as compared to another is invariably a subjective determination, there being no clear way to make 'any constitutional distinction between one term of years and a shorter or longer term of years.'" *Hutto,* 454 U.S. at 373, 102 S.Ct. at 705 (quoting *Rummel,* 445 U.S. at 275, 100 S.Ct. at 1140). The sentence imposed by section 924(c) does not violate the Eighth Amendment.

### C. *Due Process*

■ Defendants' challenge to section 924(c) on due process grounds is meritless. They argue that the thirty-year sentence for using a silencer-equipped gun fails to further the purpose of the statute in a rational way. As discussed above, however, equipping a firearm with a silencer transforms the gun into something extraordinarily dangerous to potential victims. The determination of Congress to impose a greater sanction upon those who would use such weapons is entirely rational.

Defendants also argue that the statute's reference to silencers is impermissibly vague. "[V]agueness challenges that do not involve the First Amendment must be examined in light of the specific facts of the case at hand and not with regard to the statute's facial validity." *United States v. Nadi,* 996 F.2d 548, 550 (2d Cir.) (citing *Chapman v. United States,* 500 U.S. 453, 467, 111 S.Ct. 1919, 1928–29, 114 L.Ed.2d 524 (1991)), *cert. denied,* —— U.S. ——, 114 S.Ct. 347, 126 L.Ed.2d 311 (1993); *accord United States v. Powell,* 423 U.S. 87, 92, 96 S.Ct. 316, 319–20, 46 L.Ed.2d 228 (1975). "Because the statute is judged on an as applied basis, one whose conduct is clearly proscribed by the statute cannot successfully challenge it for vagueness." *Nadi,* 996 F.2d at 550 (citing *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 495 n. 7, 102 S.Ct. 1186, 1191 n. 7, 71 L.Ed.2d 362 (1982)).

■ Section 924(c) imposes a thirty-year sentence on "[w]hoever, during and in relation to any ... drug trafficking crime ... uses or carries a firearm ... equipped with a firearm silencer or firearm muffler...." 18 U.S.C. § 924(c). The terms "firearm silencer and firearm muffler" are defined as "any device for silencing, muffling, or diminishing the report of a portable firearm...." 18 U.S.C. § 921(a)(24). According to expert testimony at trial, the .22 caliber weapon found in the oven was equipped with "a perforated tube or vented tube," the only purpose of which was to reduce the report of the weapon from 144 decibels to 114. According to the expert, this thirty-decibel reduction in sound level qualified the device as "a very good silencer."

The gun in the broiler drawer was equipped with a device that is easily classified as a silencer. The statute therefore "give[s] the person of ordinary intelligence a

**48**

reasonable opportunity to know what is prohibited," and "provide[s] explicit standards for those who apply [it]." *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222 (1972). We hold that section 924(c) is not unconstitutionally vague.

### Conclusion

We have considered defendants' other arguments and find them to be devoid of merit. For the foregoing reasons, we affirm the judgment of conviction and sentences imposed upon these defendants.