**Richard MOORE, Petitioner,**

v.

**Frank IRVIN, Superintendent, Respondent.**

No. 94 Civ. 0789.

United States District Court, N.D. New York.

Dec. 21, 1995.

Richard Moore, Alden, NY, pro se.

G. Oliver Koppell, Attorney General of the State of New York, Albany, NY (Amy Schallop, of counsel), for Respondent.

## OPINION

KOELTL, District Judge:[1]

Petitioner Richard Moore, who is currently incarcerated at Wende Correctional Facility

1. The Honorable John G. Koeltl, United States District Judge for the Southern District of New York, sitting by designation.

in Alden, New York, petitions *pro se* for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. Moore was convicted in the New York State Supreme Court, Broome County, on December 21, 1989 of two counts of rape in the first degree, two counts of sodomy in the first degree, and two counts of sexual abuse in the first degree. On appeal, the Appellate Division affirmed his conviction. *People v. Moore*, 170 A.D.2d 847, 566 N.Y.S.2d 674 (3rd Dept.1991). The New York Court of Appeals denied Moore leave to appeal. *People v. Moore*, 77 N.Y.2d 998, 571 N.Y.S.2d 924, 575 N.E.2d 410 (1991).

Moore makes the following claims in support of his habeas corpus petition: first, that the evidence adduced at trial was insufficient to support his conviction in violation of his rights under the Due Process Clause of the Fourteenth Amendment; second, that the consecutive sentences imposed upon him by the trial court violated the Double Jeopardy Clause of the Fifth Amendment; third, that the consecutive sentences imposed upon him constitute cruel and unusual punishment in violation of the Eighth Amendment; and fourth, that the imposition of consecutive sentences against him by the Trial Court constitutes an abuse of judicial discretion in violation of the Fourteenth Amendment.

## I.

Evidence introduced at the petitioner's trial supported the following facts. On the night of January 28, 1989, at about 10:00 p.m., Christina Morelock, a nineteen year-old woman, left her aunt's house in Binghamton, New York. She was walking west on Clinton Street, toward her home, when two men in a car, petitioner Moore and Kevin Fuller, drove by. As they passed Morelock, the men shouted propositions at her, asking her if she wanted "to get high, get drunk, or get laid." (Trial Tr. at 91). Morelock refused the "invitation" and continued walking. The two men, however, doubled back and drove by Morelock approximately four more times, repeating their proposition to her. (Trial Tr. at 94). Morelock continued to decline their advances and continued walking. (Trial Tr. at 91). Morelock then crossed Clinton Street in an attempt to take a "short cut" home

through an alleyway. (Trial Tr. at 91). As Morelock emerged from the alleyway, the men were waiting for her. The man who had been in the passenger seat, Fuller, was standing outside of the car talking to Moore who was sitting in the driver's seat.

Morelock stopped to speak with the petitioner and Fuller. The petitioner and Fuller asked Morelock where she was going. Morelock told them that she was going home. The two men offered to take Morelock home and asked her where she lived. Morelock refused the invitation and stated that she did not need help getting home because she lived "right around the corner." (Trial Tr. at 95). The two men responded that they would take her home anyway. During the conversation, Morelock thought that she recognized Fuller, although subsequently she realized that she had been mistaken. Fuller then put his arm around Morelock and led her to the car; Morelock resisted slightly, but according to her own admission, she was not scared. (Trial Tr. at 96). Instead, Morelock accepted Fuller's nudging and entered the car voluntarily. (Trial Tr. at 97).

After Morelock got into the car, Moore began to drive in the opposite direction from Morelock's home. Morelock questioned the two men as to why they were driving away from her home, but she did not recall receiving a response and did not express any alarm. (Trial Tr. at 98). Soon thereafter, the two men repeated their earlier proposition to Morelock, asking her "if [she] was sure ... [she] didn't want to get high or ... [she] didn't want to get laid." (Trial Tr. at 98). Morelock responded that she was sure that she did not. At trial, Morelock testified that she believed that the two men were drunk, that they were trying to "pick her up", and that they would soon tire of the activity and let her out of the car. (Trial Tr. at 99). Morelock did not perceive herself to be in any danger and she proceeded to joke with the two men regarding their advances. *Id.*

Thereafter, as Moore continued to drive further away from Morelock's home, the mood of the encounter changed. Moore asked Morelock if she would perform oral sex on him. Morelock refused, but was told by

the petitioner that she was not going to get out of the car until she did what he asked. Realizing that Moore's threat was serious, Morelock made a futile attempt to free herself from the car; she banged on the dashboard and reached across Fuller in the passenger seat to try to open the door. Moore pulled Morelock back towards him and put a knife to her face. Moore then demanded that Morelock perform oral sex on him and warned her that "he killed people." (Trial Tr. at 104). Morelock then unwillingly performed oral sex on Moore.

As Morelock was performing oral sex on Moore, Moore encouraged Fuller to participate in the sexual assault on Morelock, which Fuller then did. Morelock attempted to push Fuller's hand away, but had only limited success. Moore, who continued to drive during the assault, drove into the town of Castle Creek, apparently looking for a certain back road. When the petitioner found the road, he discovered that it was blocked off. Thereafter, the petitioner attempted to back the car up, but got stuck in a ditch. As Moore attempted to get the car out of the ditch, a man came out of a nearby house due to the disturbance. Morelock began to scream for help when she saw the man, but the man just told them to get out of there and did not attempt to help her. (Trial Tr. at 110).

Moore was eventually able to get the car unstuck and began to drive again. Moore stopped at one point to allow the two men, one at a time, to urinate. When the car was stopped, Moore told Morelock to climb into the backseat. Moore followed Morelock into the backseat and Fuller began to drive. Moore then proceeded to rape Morelock at knife-point. At some point during the rape, Fuller told Moore that the car needed gas. Moore then ceased having intercourse with Morelock. Fuller stopped the car so that Moore could resume driving. Moore told Morelock to "pull [her] pants back up" and get back into the front seat. (Trial Tr. at 114). Moore then drove to a gas station in Great Bend, Pennsylvania. Moore got out of the car to pump gas into the tank. Morelock made some attempt to alert the gas station attendant to her situation, but was silenced when Fuller threatened her with a small folding knife. While waiting for Moore, Fuller warned Morelock not to escape because Moore was "crazy." (Trial Tr. at 115).

After Moore paid for the gas, he got back into the car. Moore struck Morelock in her back and ordered her to make a bowl out of a beer can to smoke marijuana, which Morelock did. Moore and Fuller then smoked the marijuana; Morelock declined although the two men offered it to her.

Moore continued to drive around "some back roads" in Great Bend. (Trial Tr. at 116). He again stopped the car to allow each man to urinate. When the car was stopped, Moore again told Morelock to get into the backseat. Moore followed Morelock into the backseat and Fuller again drove the car. Moore then proceeded to rape Morelock a second time. (Trial Tr. at 117).

As the second rape was occurring, Moore and Fuller talked about where they were. They stopped the car again so that Fuller could urinate. When the car was stopped, Moore ordered Morelock into the front seat. After Morelock returned to the front seat, she spoke to Fuller about escaping—a conversation which Moore could not hear because of the noise of the car's muffler. Fuller claimed that he could "get [Morelock] home" and that the next time he told Moore to stop the car, that Morelock should get out of the car with Fuller. (Trial Tr. at 118). Soon thereafter, Fuller asked Moore to stop the car, which Moore did, but Fuller did not help Morelock; instead Fuller got out of the car alone and told Moore that he was going home. As Fuller left, Moore wrapped his arm around Morelock to prevent her from fleeing.

After Fuller had left, Moore apologized to Morelock for his behavior. Moore explained that he had treated Morelock poorly because he was lonely, and he asked her if she was going to "turn him in." (Trial Tr. at 119). Morelock responded that she would not, but that she wanted to go home. Eventually, Moore dropped Morelock off on a dark road. Morelock walked alone to the gas station in Great Bend that the car had stopped at earlier. She was able to get a ride back to

her home in Binghamton from a person at the gas station.

Morelock described to the police the knife that Moore used on her during the attack. A search of the petitioner's home uncovered a box with a picture of a knife on it which matched the description given by Morelock. The knife, however, was not found. Morelock identified Moore as the driver of the car.

## II.

Before obtaining relief under 28 U.S.C. § 2254, a petitioner must exhaust all available state remedies. 28 U.S.C. § 2254(b); *see also Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971); *Blissett v. Lefevre,* 924 F.2d 434, 438 (2d Cir.), *cert. denied,* 502 U.S. 852, 112 S.Ct. 158, 116 L.Ed.2d 123 (1991). Here, the petitioner has exhausted his state court remedies because he presented all the issues he now raises in his direct appeal from his conviction. The Appellate Division's affirmance of the conviction and the Court of Appeals' denial of leave to appeal satisfy the exhaustion requirement. *See Williams v. Smith,* 591 F.2d 169, 171 (2d Cir.), *cert. denied,* 442 U.S. 920, 99 S.Ct. 2845, 61 L.Ed.2d 289 (1979).

In addition, a petitioner must allege that he is in state custody in violation of the Constitution or a federal law or treaty as a prerequisite to relief under § 2254. 28 U.S.C. § 2254(a). The petitioner's claims satisfy this requirement; each alleges a constitutional violation.

## III.

Under § 2254(d), a federal court in a habeas corpus proceeding must accord a "presumption of correctness" to a "determination after a hearing on the merits of a factual issue, made by a state court of competent jurisdiction," unless the conditions for one of the seven listed exceptions are met or unless the state court findings are not "fairly supported" by the record as a whole. 28 U.S.C. § 2254(d); *accord Ventura v. Meachum,* 957 F.2d 1048, 1054 (2d Cir.1992).

 Claims of insufficiency of evidence upon which to base a conviction are cognizable claims of due process violations. *Jackson v. Virginia,* 443 U.S. 307, 316, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560 (1979). In *Jackson,* the Supreme Court held that on such a challenge to a state court conviction, pursuant to § 2254, the petitioner is entitled to habeas corpus relief if it is found that, based on the evidence adduced at trial, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 319, 99 S.Ct. at 2789; *accord Wheel v. Robinson,* 34 F.3d 60, 66 (2d Cir.1994). The Court in *Jackson* explained that in reviewing the evidence, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson,* 443 U.S. at 326, 99 S.Ct. at 2793; *accord Wheel,* 34 F.3d at 66.

 The petitioner claims that the evidence presented at trial was insufficient to convict him of the offenses for which he was convicted. Specifically, the petitioner asserts that Morelock's credibility is doubtful and that "her accounts of coercion and compulsion were concocted" and that instead, "she was a willing participant in the debauchery." (Petitioner's Third Dept. Appellate Brief). He relies on her delay of a couple of days in reporting the crimes. It is not the duty of the habeas court to weigh the evidence or determine the credibility of witnesses, but instead, to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Wheel v. Robinson,* 34 F.3d at 66; *Roehler v. Borg,* 945 F.2d 303, 306 (9th Cir.1991) ("We do not have the juror's right to weigh evidence.... The question is ... whether rational jurors could reach the conclusion that these jurors reached.")

At trial, Morelock admitted that she voluntarily entered the petitioner's car because the petitioner's companion, Fuller, looked familiar to her. However, the testimony given by

Morelock describing the events which occurred thereafter, which the jury was entitled to credit, does not in any way support the petitioner's contention that Morelock was "a willing participant in the debauchery." Morelock gave detailed testimony describing numerous acts which constituted rape, sodomy, and sexual abuse by the petitioner. (Trial Tr. at 89–136). The testimony was detailed and precise and establishes the crimes for which the petitioner was convicted. Further, a nurse who examined Morelock after the incident confirmed that there were bruises on Morelock's body, (Trial Tr. at 86–87), and laboratory tests found evidence of spermatozoa on the clothing Morelock wore on the night the crimes were alleged to have occurred, (Trial Tr. at 278–81). In addition, Morelock described in detail the knife that the petitioner used to threaten her, and that description matched the photograph on a knife box found by police in the petitioner's bedroom. (Trial Tr. at 106, 130–31).

In reviewing the sufficiency of evidence on a petition for habeas corpus, a federal court is not to decide "whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit," *Herrera v. Collins*, 506 U.S. 390, 402, 113 S.Ct. 853, 861, 122 L.Ed.2d 203 (1993). Based on the evidence presented at trial, a rational jury could well have determined that Morelock suffered rape, sodomy, and sexual abuse by the petitioner. *Jackson v. Virginia*, 443 U.S. at 319, 99 S.Ct. at 2789. Therefore, petitioner's application for a writ of habeas corpus on the ground of insufficiency of the evidence is denied.

## IV.

In his second ground for relief, the petitioner claims that the imposition of consecutive sentences for his offenses subjected him to Double Jeopardy[2] in violation of the Fifth Amendment of the Constitution, which applies under the Fourteenth Amendment to a state court prosecution. *See Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

The Double Jeopardy Clause serves three primary purposes. First, it protects against a second prosecution for the same offense after an acquittal. Second, it protects against a second prosecution for the same offense after a conviction. Third, it protects against multiple punishments for the same offense after a conviction. *See North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). The petitioner claims that the last of these protections was violated by the imposition of consecutive sentences against him. Petitioner claims that the two rape convictions upon which consecutive sentences were imposed constitute the same offense as the sodomy and sexual abuse charges because each sexual act was part of a continuing course of activity.

The record shows, however, that although the rapes were perpetrated against the same victim and took place over the course of the same night, there were significant temporal and spatial differences between the rapes and the acts of sodomy and sexual abuse; each rape was a separate and distinct offense, not the product of a single criminal incident. *See People v. Moore*, 170 A.D.2d at 849, 566 N.Y.S.2d at 676, *lv. denied*, 77 N.Y.2d 998, 571 N.Y.S.2d 924, 575 N.E.2d 410 (1991).

The evidence presented at trial demonstrated that the petitioner engaged in separate sexual acts constituting distinct offenses. Soon after Morelock entered the petitioner's car, the petitioner sexually abused and sodomized Morelock. Thereafter, a period of time elapsed during which the petitioner's car got stuck in, and was freed from, a ditch; the car was stopped to change drivers; and Morelock was forced into the backseat. At that time, the petitioner raped Morelock at knifepoint in the backseat of the car. After the first rape, Moore again drove the car for a while, stopped the car to take off the gas cap, started driving looking for a gas station,

---

2. In petitioner's statement of supporting facts, he only alleges a jurisdictional defect. However, given the petitioner's *pro se* status, the Court will construe the argument liberally to raise a constitutional argument and will consider the argument set forth in the petitioner's Third Department appellate brief in support of his double jeopardy claim.

found a gas station, filled up the gas tank, drove around again, and stopped the car to force Morelock into the backseat once again. At that point, the petitioner again raped Morelock. These offenses, despite the fact they were committed over the course of one night, do not constitute a single, continuous offense.

The courts of New York have held that multiple rapes of the same victim over a period of time constitute separate and distinct offenses and are punishable as such. *See People v. Benn,* 213 A.D.2d 489, 489, 623 N.Y.S.2d 634, 635 (2d Dept.1995); *People v. Barnes,* 204 A.D.2d 341, 342, 611 N.Y.S.2d 608, 609 (2d Dept.1994); *People v. Brown,* 66 A.D.2d 223, 226, 413 N.Y.S.2d 482, 483–84 (3rd Dept.1979) (three rapes of a victim which took place over course of seven hours were punishable as separate and distinct offenses; consecutive sentences were imposed upon defendant); *see also People v. Williams,* 114 A.D.2d 683, 685, 494 N.Y.S.2d 563, 565 (3rd Dept.1985) (trial court could impose consecutive sentences upon defendant who had raped victim twice, aided and abetted accomplice's rape of victim, and thereafter robbed victim because the various crimes arose from discrete activities in the course of a continuous criminal episode); *People v. Telford,* 134 A.D.2d 632, 633, 521 N.Y.S.2d 523, 524 (2d Dept.1987) ("[A]lthough the charges ... arose from one incident involving a continuous course of activity, the evidence ... demonstrated that the defendant engaged in separate sexual acts constituting distinct offenses justifying making the sentences imposed for sodomy ... consecutive to the sentences imposed for rape ... and attempted rape...."); *People v. Maxwell,* 122 A.D.2d 435, 436, 504 N.Y.S.2d 832, 834 (3rd Dept.1986) ("Defendant's crimes, attempted rape and sodomy, were discrete and separate, the former having occurred inside defendant's car and the latter outside where the victim had been dragged after successfully warding off the rape attack. Hence, consecutive sentences were not inappropriate.").

As the Appellate Division, Third Department, correctly held in this case, "[S]ince the two acts of rape were separated by both time and location from the prior acts of sodomy and sexual abuse, they constituted separate and distinct crimes and cannot be considered as multiple prosecutions so as to raise the defense of double jeopardy." *People v. Moore,* 170 A.D.2d at 849, 566 N.Y.S.2d at 676. Because the consecutive sentences were imposed for separate and distinct offenses, the petitioner was not subjected to Double Jeopardy.

## V.

The petitioner, in his third ground for relief, claims that the consecutive sentences imposed upon him constitute cruel and unusual punishment in violation of the Eighth Amendment.

■ The Eighth Amendment, which applies against the States by virtue of the Fourteenth Amendment, *Robinson v. California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." "The Eighth Amendment prohibits imposition of a sentence that is grossly disproportionate to the severity of the crime." *United States v. Santos,* 64 F.3d 41, 45 (2d Cir.1995) (quoting *Rummel v. Estelle,* 445 U.S. 263, 271, 100 S.Ct. 1133, 1138, 63 L.Ed.2d 382 (1980)). *Rummel* has been held to stand for "the proposition that federal courts should be reluctant to review legislatively mandated terms of imprisonment, and that successful challenges to the proportionality of particular sentences should be exceedingly rare." *Id.* at 45 (quoting *Hutto v. Davis* 454 U.S. 370, 374, 102 S.Ct. 703, 705, 70 L.Ed.2d 556 (1982) (per curiam) (internal quotation marks and citation omitted)). "In view of the substantial deference that must be accorded legislatures and sentencing courts, a reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate." *Id.* at 46 (quoting *Solem v. Helm,* 463 U.S. 277, 290 n. 16, 103 S.Ct. 3001, 3010 n. 16, 77 L.Ed.2d 637 (1983)). Nevertheless, "as a matter of principle ... a criminal sentence must be proportionate to the crime for which the defendant has been convicted." *Id.* at 46 (quoting *Solem v. Helm,* 463 U.S. at 290, 103 S.Ct. at 3009).

■ The petitioner was sentenced as follows:

| Count One | Sodomy in the First Degree: | 8 to 24 years |
| Count Two | Sexual Abuse in the First Degree: | 2 to 6 years |
| Count Three | Sexual Abuse in the First Degree: | 2 to 6 years |
| Count Four | Sodomy in the First Degree: | 5 to 15 years |
| Count Five | Rape in the First Degree: | 8½ to 25 years |
| Count Six | Rape in the First Degree: | 8½ to 25 years |

The Trial Court directed that the sentences under Counts One through Four be served concurrently and that the sentences under Counts Five and Six be served consecutive to Counts One through Four and to each other. The sentence of 5 to 15 years imposed upon petitioner's plea of guilty to Count Seven (a 1986 rape charge which is not challenged here) was to be served consecutively to Counts One through Six. Thus, the aggregate term imposed was deemed by operation of law to be 29⅔ to 50 years. N.Y.PENAL LAW § 70.30(1)(c)(iii) (Sent.Tr. at 13–16).

The individual sentences and the aggregate sentences are within the statutory limits provided under the New York Penal Law § 70.00. The Supreme Court has stated that "one could argue without fear of contradiction by any decision of [the Supreme Court] that for crimes concededly classified and classifiable as felonies ... the length of the sentence actually imposed is purely a matter of legislative prerogative." *Rummel v. Estelle,* 445 U.S. at 274, 100 S.Ct. at 1139. *See also Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (discussing the limited scope of the proportionality principle under the Eighth Amendment).[3]

Courts have regularly rejected Eighth Amendment challenges to sentences in circumstances arguably more compelling than those presented here. *United States v. Santos,* 64 F.3d 41 (2d Cir.1995) (citing *Harmelin v. Michigan,* 501 U.S. at 996, 111 S.Ct. at

2702 (life without parole for possession of 672 grams of cocaine); *Hutto v. Davis,* 454 U.S. at 374, 102 S.Ct. at 705 (forty-year sentence for possession with intent to distribute nine ounces of marijuana); *Rummel v. Estelle,* 445 U.S. at 286, 100 S.Ct. at 1145 (life sentence under state recidivist statute, where the three predicate offenses were fraudulent use of a credit card to obtain $80 worth of goods, passing a forged check in the amount of $28.36, and obtaining $120.75 by false pretenses); *United States v. Valdez,* 16 F.3d 1324, 1334 (2d Cir.) (life without parole for "merely middle-level drug dealers"), *cert. denied,* —— U.S. ——, 115 S.Ct. 60, 130 L.Ed.2d 18 (1994)). The Court of Appeals for the Second Circuit has stated that the "Eighth Amendment condemns only punishment that shocks the collective conscience of society." *United States v. Santos,* 64 F.3d at 47 (quoting *United States v. Gonzalez,* 922 F.2d 1044, 1053 (2d Cir.), *cert denied,* 502 U.S. 1014, 112 S.Ct. 660, 116 L.Ed.2d 751 (1991)). Further, "the excessiveness of one prison term as compared to another is invariably a subjective determination." *Hutto v. Davis,* 454 U.S. at 373, 102 S.Ct. at 705 (quoting *Rummel v. Estelle* 445 U.S. at 275, 100 S.Ct. at 1140); *see also United States v. Santos,* 64 F.3d at 47 (quoting *Hutto*). Therefore, considering the sentence imposed upon the petitioner, taking into account the heinousness and depravity of his crimes, considering the principles set forth above, and recognizing that the sentences were within the statutory mandate, the Court holds that the sentence imposed upon the petitioner does not violate the Eighth Amendment prohibition against cruel and unusual punishment.

## VI.

■ The petitioner, in his fourth claim, asserts that the imposition of consecutive sentences by the Trial Court was an abuse of judicial discretion in violation of the Due

---

**3.** Although the Supreme Court has acknowledged that the severity of a sentence may be reviewable in extreme cases, for example, "if a legislature made overtime parking a felony punishable by life imprisonment", *Rummel v. Estelle,* 445 U.S. at 274, n. 11, 100 S.Ct. at 1139, n. 11, the exception is a narrow one, and although

"one can imagine extreme examples that no rational person, in no time or place, could accept", such examples are easy to decide because "they are certain never to occur." *Harmelin v. Michigan,* 501 U.S. at 985–86, 111 S.Ct. at 2696–97 (opinion of Justice Scalia).

208

Process Clause of the Fourteenth Amendment. However, claims arising out of a state court's sentencing decision are ordinarily not reviewable by a federal habeas court. *Haynes v. Butler,* 825 F.2d 921, 923 (5th Cir.1987), *cert. denied,* 484 U.S. 1014, 108 S.Ct. 717, 98 L.Ed.2d 667 (1988). If the sentence is within statutory limits, a petitioner must show that the state court's sentencing decision was wholly devoid of discretion or amounted to an arbitrary or capricious abuse of discretion, or that an error of law resulted in the improper exercise of the sentencer's discretion and thereby unjustly deprived the petitioner of his liberty. *See Haynes v. Butler,* 825 F.2d at 924 (citing *Hicks v. Oklahoma,* 447 U.S. 343, 346, 100 S.Ct. 2227, 2229, 65 L.Ed.2d 175 (1980)).

In this case, the sentence imposed by the Trial Court falls within the range prescribed by state law. *See* N.Y.PENAL LAW § 70.00. Given the heinous nature of the offenses, the sentence was not an arbitrary or egregious use of discretion and there were no legal errors in the imposition of the sentence, and the petitioner cites none. The consecutive sentences were properly imposed under New York law for separate criminal acts which constituted separate and distinct offenses. The evidence presented at trial demonstrated that the petitioner engaged in separate sexual acts constituting distinct offenses in that the two acts of rape were separated by both time and location from each other and from the prior acts of sodomy and sexual abuse. *See* section IV, *supra.* Accordingly, the consecutive sentences were authorized by state law and did not result in any unconstitutional deprivation of the petitioner's liberty.

For all of the foregoing reasons, the petition for writ of habeas corpus is denied.

**SO ORDERED.**