Terry PRESSLEY, Petitioner,

v.

Floyd BENNETT, Superintendent of the Elmira Correctional Facility, Respondent.

No. 01 Civ. 5831(RMB)(GWG).

United States District Court, S.D. New York.

Jan. 3, 2003.

Herald Price Fahringer, Lipsitz, Green, Fahringer LLP, New York, NY, for Petitioner.

Ilisa Fleischer, Dist. Atty. Office of NY, New York, NY, for Respondent.

### ORDER

BERMAN, District Judge.

## I. Background

On June 26, 2001, Petitioner Terry Pressley ("Pressley" or "Petitioner") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Petition") challenging his February 12, 1997 conviction in Supreme Court, New York County, for rape, sodomy, and sexual abuse in violation of N.Y. Penal Law §§ 110/130.65(1), 130.50(1), 130.65(1). On February 9, 1999, the New York State Supreme Court denied Petitioner's CPL § 440.10 motion to vacate the judgment of conviction and set aside his sentence, following an evidentiary hearing. Decision and Order of Supreme Court, New York County, dated February 9, 1999. On March 25, 1999, Petitioner's conviction was affirmed by the Appellate Division, First Judicial Department. *People v. Pressley*, 259 A.D.2d 416, 688 N.Y.S.2d 20 (1st Dep't 1999) ("[w]e find no basis to disturb the factual determination of the court that defendant was informed of the additional charge[s] being considered by the Grand Jury [prior to testifying before the Grand Jury] ... defendant received meaningful representation at the Grand Jury stage [and][w]e perceive no abuse of sentencing discretion").[1] Leave to appeal to the New York State Court of Appeals was granted on June 28, 1999. *See* Order Granting Leave, dated June 28, 1999. On April 6, 2000, the Court of Appeals affirmed Petitioner's conviction and sentence. *People v. Pressley*, 94 N.Y.2d 935, 936–37, 708 N.Y.S.2d 32, 729 N.E.2d 689 (2000) (finding, *inter alia*, that the issue of proper notice as to the additional charge was "unpreserved" for review and "that defendant received meaningful representation before the Grand Jury and at trial.").

In his Petition, Pressley alleges, among other things, that: (1) his Fifth and Sixth Amendment rights were violated because he was confronted with additional charges during his appearance before the grand jury; (2) he was denied effective assistance of counsel with respect to his grand jury

---

1. The additional charges related to the alleged September 2, 1995 rape by Petitioner of the complaining witness.

appearance; and (3) his sentence of 19–26 years constitutes cruel and unusual punishment. Respondent opposed the Petition on November 21, 2001. Petitioner filed a reply on February 22, 2002.

On September 10, 2002, United States Magistrate Judge Gabriel W. Gorenstein, to whom this matter had been referred, issued a thoughtful and comprehensive Report and Recommendation ("Report") recommending that Pressley's Petition for a writ of habeas corpus be denied, Report at 353, because his Fifth and Sixth Amendment claims are procedurally barred and, in any event, "Pressley has not made out a claim of ineffective assistance of counsel." *Id.* at 361–62. In addition, the Magistrate concluded that Pressley's sentence was not in violation of the Eighth Amendment, considering, among other things, the gravity of his crimes, his prior record, and comparable sentences. *Id.* at 367–68.

The Report advised that "[p]ursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report to file any written objections." *Id.* On December 13, 2002, Petitioner filed objections to the Report ("Petitioner's Objections"). As of this date, no objections have been filed by the Respondent. **For the reasons set forth below, the Report is adopted in its entirety.**

## II. Standard of Review

The court may adopt those portions of a Magistrate's report to which no objections have been made and which are not facially erroneous. *See* Fed.R.Civ.P. 72(b); *see, e.g., Pizarro v. Bartlett*, 776 F.Supp. 815, 817 (S.D.N.Y.1991); *Nelson v. Smith*, 618 F.Supp. 1186, 1189 (S.D.N.Y.1985). The court conducts a de novo review of those portions of a Magistrate's report to which objections have been made. *See, e.g., Letizia v. Walker*, 1998 WL 567840 at *1

(W.D.N.Y. Aug.2, 1998); *Pizarro*, 776 F.Supp. at 817. Once objections are received, a district judge may accept, reject, or modify, in whole or in part, the findings and recommendations of the Magistrate. *See, e.g., DeLuca v. Lord*, 858 F.Supp. 1330, 1345 (S.D.N.Y.1994); *Walker v. Hood*, 679 F.Supp. 372, 374 (S.D.N.Y. 1988).

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2254(d) (2000), "[a]n application for a writ of habeas corpus ... shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." "[T]he federal courts 'must give the state court's adjudication a high degree of deference.'" *Dickens v. Filion*, 2002 WL 31477701, at *7 (S.D.N.Y. Nov.6, 2002) (quoting *Yung v. Walker*, 296 F.3d 129, 134 (2d Cir.2002)).

## III. Analysis

The facts as set forth in the Report are incorporated herein by reference.

The Court has conducted a de novo review of the record herein, including, among other things, the Report, Petitioner's Objections, and applicable legal authorities, and concludes that Magistrate Gorenstein's legal and factual determinations are supported by the record and the law in all material respects. Petitioner's Objections do not provide a basis for de-

parting from the Report's recommendations.[2]

### Fifth and Sixth Amendment Claims

The Magistrate properly concluded that Petitioner's Fifth and Sixth Amendment claims—based upon the prosecutor's presentment of additional charges to the grand jury—must be denied for several reasons.[3] Among other things, Magistrate Gorenstein determined that because the New York State Court of Appeals "refused to consider Pressley's claims regarding the failure to give him notice of the [additional] grand jury charges on the ground that he failed to raise them timely before the trial court," federal habeas review is barred. Report at 361; *see Harris v. Reed,* 489 U.S. 255, 260, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (where state court judgment relies on state grounds that are "independent of the merits of the federal claim and an adequate basis for the court's decision," federal habeas relief is barred); *Jones v. Vacco,* 126 F.3d 408, 415 (2d Cir.1997) ("federal habeas review of federal claims is barred 'if a petitioner defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule ...'") (quoting *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)).

The Magistrate concluded that "[e]ven if Pressley had properly presented [these claims his Petition] would still have to be denied on the merits," Report at 362, since (i) Petitioner has failed to rebut by "clear and convincing evidence" the statutory presumption of correctness of the state court's finding that adequate notice of the additional charges was given, *id.* at 362–63; *see* 28 U.S.C. § 2254(e)(1), and (ii) "Pressley does not cite, nor is the Court aware of any federal constitutional principle that requires the prosecution to provide notice of charges to a defendant before he or she decides whether to testify in a grand jury." Report at 362–63; *see, e.g., United States v. Williams,* 504 U.S. 36, 49, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992) ("certain constitutional protections afforded defendants in criminal proceedings have no application before [a grand jury]"); *see also United States v. Ruiz,* 894 F.2d 501, 505 (2d Cir. 1990).

### Ineffective Assistance of Counsel Claim

Petitioner contends, among other things, that he received ineffective assistance at the grand jury proceedings because his former counsel, Eugene Bogan, Esq., failed to investigate the additional charges that the prosecutor planned to present before "allowing" Petitioner to testify. Petitioner's Objections at 18–19.[4]

The Magistrate concluded that if Petitioner informed his attorney that he

---

**2.** As to any portions of the Report to which no objections have been made, the Court concludes that the Report is not clearly erroneous. *See Pizarro,* 776 F.Supp. at 817. Any objections which are not specifically discussed in this Order have been considered *de novo* and rejected.

**3.** Petitioner agreed to testify before the grand jury in connection with the charge (against him) of sodomy in the first degree which took place on December 1, 1995. Petitioner's counsel was informed prior to testifying of the additional charges of rape and sexual abuse (against Petitioner) which occurred on Sep-

tember 2, 1995. Petitioner appeared before the Grand Jury on February 20, 1996. Report at 353–54.

**4.** "To establish a claim of ineffective assistance of counsel, a convicted defendant must show that (1) his counsel's performance fell below an objective standard of reasonableness; and (2) but for the deficiency, there is a reasonable probability that the outcome of the proceeding would have been different." *U.S. v. De La Pava,* 268 F.3d 157, 163 (2d Cir. 2001) (citing *Strickland v. Washington,* 466 U.S. 668, 687–96, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

planned to perjure himself as to his whereabouts on September 2, 1995, "an investigation was certainly unnecessary," Report at 365, and, alternatively, if Petitioner did not tell his attorney the truth regarding the September 2nd incident, counsel's decision to allow Petitioner to testify cannot be deemed objectively unreasonable. *Id.* at 365–66 ("attorneys are not obligated to distrust their clients and conduct independent investigations of their clients' statements before they may reasonably rely on their accuracy"); *see also Morris v. Slappy,* 461 U.S. 1, 21, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983) ("decisions can best be made, and counsel's duties most effectively discharged, if the attorney and the defendant have a relationship characterized by trust and confidence").

And, because the New York Court of Appeals determined that Petitioner "received meaningful representation before the Grand Jury," *People v. Pressley,* 94 N.Y.2d at 936, 708 N.Y.S.2d 32, 729 N.E.2d 689, it was necessary for Petitioner to show that the court's "decision was not just incorrect, but 'objectively unreasonable.'" Report at 366–67 (quoting *Bell v. Cone,* 535 U.S. 685, 122 S.Ct. 1843, 1852, 152 L.Ed.2d 914 (2002)). No such showing has been made. *See* Report at 366–67.

**Excessive Sentence Claim**

Magistrate Gorenstein concluded that Petitioner's sentence of 19 to 26 years is not disproportionate to his offense(s) so as to violate the Eighth Amendment. Report at 367–68. In reaching this conclusion, the Magistrate properly determined that: (i) Petitioner's crimes were grave, so as to "warrant[ ] a severe punishment"; (ii) "other criminals in New York state have received comparable sentences" for similar offenses; and (iii) other jurisdictions have upheld longer sentences for similar crimes. *Id.* at 366–68; *see United States v. Bennett,* 252 F.3d 559, 567 (2d Cir.2001), *cert.*

*denied,* 535 U.S. 932, 122 S.Ct. 1307, 152 L.Ed.2d 217 (2002) ("[i]n assessing the constitutionality of a sentence under the Eighth Amendment, the court must assess the gravity of the offense and the harshness of the penalty, the sentences imposed on other criminals in the same jurisdiction, and the sentences imposed for commission of the same crime in other jurisdictions"). The Magistrate also took into account Petitioner's prior record "which includes, among other convictions, a 1989 conviction for Attempted Robbery in the Second Degree ... and a 1993 conviction for Assault in the Third Degree." Report at 368.

## IV.   Certificate of Appealability

Because Petitioner has not made a "substantial showing of the denial of a constitutional right," a certificate of appealability will not issue. 28 U.S.C. § 2253; *see United States v. Perez,* 129 F.3d 255, 260 (2d Cir.1997).

## V.   Conclusion

The Court adopts the Report [15] in all material respects and, for the reasons stated therein and herein, denies the Petition. Additionally, because Petitioner has not made a "substantial showing of the denial of a constitutional right," a certificate of appealability will not issue. 28 U.S.C. § 2253. The Clerk is respectfully requested to close this case.

## *REPORT AND RECOMMENDATION*

GORENSTEIN, United States Magistrate Judge.

Terry Pressley, who is incarcerated at the Elmira Correctional Facility, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the following reasons, the petition should be denied.

## I. *FACTUAL BACKGROUND*

### A. *Arrest, Grand Jury Proceedings and Indictment*

On February 13, 1996, Pressley was arrested and charged with one count of Sodomy in the First Degree. The complaint alleged that in the early morning of December 1, 1995, Pressley forced Janice Gurley to perform oral sex on him at 350 Greenwich Street in New York City. *See* Felony Complaint, undated (reproduced at A. 161).[1] Pressley's appointed counsel, who represented him only at arraignment, served the District Attorney's office with a written notice, pursuant to New York Criminal Procedure Law (CPL) § 190.50, that Pressley wished to testify before the grand jury concerning the incident. Affirmation of Herald Price Fahringer, dated June 27, 1997 ("Fahringer Aff.") (reproduced in Answer and Exhibits, dated November 21, 2001 ("Answer"), Ex. E), at 3 (A.52). Pressley subsequently retained Eugene Bogan as defense counsel.

On Friday, February 16, 1996, the prosecution presented evidence to a grand jury about the December 1 incident as well as an additional incident, not alleged in the felony complaint, in which Gurley alleged that Pressley had raped her on September 2, 1995, in Pressley's home. Pressley was scheduled to testify before the grand jury on the afternoon of February 16, 1996. *See* Affirmation in Response to Defendant's Motion to Vacate Judgment, dated October 1, 1997 ("Gardner Aff.") (reproduced as Answer, Ex. H), at 1–2. However, court congestion, a snowstorm and a holiday weekend caused the proceedings to be adjourned until Tuesday, February 20, 1996. *See* Gardner Aff. at 2. The assistant district attorney assigned to Pressley's

prosecution, Sarah A. Gardner, testified that she informed Pressley's counsel on Friday, February 16th, of the additional charges involving the September 2nd incident. *See* Transcript of October 17, 1997, at 34. Bogan testified, however, that he was not told of the additional charges until Tuesday, February 20th, moments before Pressley was supposed to testify before the grand jury. *See* Tr. 898, 904. (A.163, 169).

Upon learning of the new charges, Bogan stated that he consulted with Pressley to see if he still wanted to testify before the grand jury. Tr. 899 (A.164). Later on, Bogan also talked to Pressley's parents. Pressley's mother told Bogan that the alleged incident occurred on a Saturday, that she was home the entire day, and that "Terry had gone out and bought pants or something." Tr. 900 (A.165).

On February 20, Pressley appeared before the grand jury. Under questioning by Gardner, Pressley confirmed that he had signed a waiver of immunity and acknowledged that he was aware that his testimony could be used against him in other proceedings. Transcript of Grand Jury Testimony of Terry Pressley ("GJ Test.") at 33–34 (A.172–73). He also affirmed that he consulted an attorney before deciding whether to testify before the grand jury and he declined additional time to consult with his attorney. GJ Test. at 35–36 (A.173–74).

When questioned about the September 2 incident, Pressley testified in detail about his whereabouts on that date and stated that he had not seen Gurley at all. GJ Test. at 44–49 (A.183–88). He also testified that Gurley had never been to his

---

1. References to "A. " are to the pages of the Appellant's Appendix, filed in connection with Pressley's appeal to the New York Court of Appeals, reproduced as Ex. A to the Declaration in Support of Petition, dated June 25, 2001 ("Fahringer Decl."), which is annexed to the petition. References to "Tr." are to the transcript of Terry Pressley's trial.

apartment and would be unable to describe it. (*Id.*). With respect to the December incident, Pressley testified that he had had no contact at all with Gurley on that date and had not even been in the garage where the December rape was alleged to have taken place. GJ Test. at 51–52 (A.190–91). He testified that the only time he had ever seen Gurley was on a single occasion over the summer on the street. GJ Test. at 52–53 (A.191–92).

After conferring with a grand juror, Gardner questioned Pressley about his contacts with Detective Aponte. GJ Test at 57 (A.196). She asked Pressley, "[a]nd you, in two and [a] half months, never went to his office to speak to him, did you?" GJ Test. at 57–58 (A.196–97). Pressley stated that he never did and that Aponte had come to his house to speak to him on two occasions. GJ Test. at 58 (A.197). Gardner also elicited from Pressley the fact that he had spoken on the phone with Aponte the day of the arrest and agreed to meet with him later that evening; however, Aponte stopped Pressley in front of his house that morning. GJ Test. at 58 (A.197). Gardner later stated that "a grand juror would like to know what the detective told [Pressley]" when he contacted him on December 1st. GJ Test. at (A.199). Pressley stated that Aponte had not contacted him until December 3rd and told Pressley he wanted to question him "in regards to someone fondling a little child." (*Id.*). When Gardner asked if Pressley went to speak to him then, Pressley responded that he "couldn't go that day." GJ Test. at 60–61 (A.199–200). Finally, Gardner asked Pressley, at the behest of a grand juror, when he first became aware that a complaint was filed against him in this matter. GJ Test. at 61 (A.200). Pressley stated that he did not know a complaint was filed against him until the day he was arrested. (*Id.*).

On February 21, 1996, Pressley was indicted in connection with both the September and December incidents. *See* Indictment (reproduced as Answer, Ex. A); Memorandum of Law in Support of Petition Under 28 U.S.C. § 2254, filed June 26, 2001 ("Pet.Mem.") at 17. The indictment charged him with two counts of Sexual Abuse in the First Degree (Penal Law § 130.65(1)) (one count for each incident), attempted Rape in the First Degree (Penal Law §§ 110/130.35(1)) (in connection with the December incident), Sodomy in the First Degree (Penal Law § 130.50(1)) (in connection with the December incident), and Rape in the First Degree (in connection with the September incident).

### B. *Trial, Sentence and Post–Conviction Motions*

Shortly after the indictment was returned, Pressley's parents fired Bogan "because of their dissatisfaction with the manner in which he had represented their son during the grand jury proceedings." Pet. Mem. at 17; *see also* Affidavit of Alex B. Pressley, dated June 27, 1997 (reproduced in Answer, Ex. E), at 6. They retained Regina Darby, who represented him until the trial verdict. On January 28, 1997, Pressley's trial began. Because the details of the evidence offered at trial are not directly relevant to the issues raised in Pressley's petition, only a summary of some material portions of the testimony is presented here.

Gurley testified that she worked in a parking garage near Pressley's home and that she saw Pressley every three or four days and exchanged pleasantries with him. (Gurley: 50–52). On September 2, 1995, she saw Pressley on Greenwich Street and he invited her to his home for a barbecue. (Gurley: 52–54). She accepted and Pressley escorted Gurley to his townhouse. (Gurley: 54, 58–60). At the house, Gurley

sat down in the living room and, looking through a sliding glass door, noticed that the barbecue equipment had obviously not been used that day and realized that she wanted to leave; she asked to use the bathroom before she left. (Gurley: 60–62). Pressley then led her up a flight of stairs to a bathroom. (Gurley: 62–63). After she left the bathroom, Pressley called her into another room with a bed next to a large window without curtains. After Gurley resisted his advances, Pressley pushed Gurley to the floor and then Pressley threw himself on top of her on a bed as she was punching him in the stomach. After Gurley tried to flee, Pressley grabbed her arms and held her down on the bed while he raped her. (Gurley: 63–74). Gurley decided not to tell anyone about the incident including her doctor. (Gurley: 79–80, 317). Gurley's testimony reflected that she was able to describe in detail the layout of the Pressley home.

Gurley also testified that on December 1, 1995, at about 3:00 a.m. Pressley entered the garage where she was working. (Gurley: 86–87). Pressley asked her if she needed anything; Gurley said she was hungry and gave him some money to buy her food. (Gurley: 88–89). Pressley returned 30 minutes later with the food and left the garage a few minutes later. (Gurley: 90–92). At 6:00 a.m. he returned smelling of liquor and requested that Gurley perform oral sex on him. (Gurley: 92–93). When she refused, he pushed her down, grabbed her hair, forced his penis into her mouth and ejaculated on her face and mouth. (Gurley 93–99). Gurley wiped her face and mouth with tissues. (Gurley: 99). Moments later, Gurley's beeper sounded and Pressley ran away. (Gurley: 99–100). Gurley reported the incident to her friends, retrieved the tissues and informed the police. (Gurley: 103–04, 109–11). She gave the tissues to the police. (Gurley: 110). Later, she described the September rape to the police. (Gurley: 109–10).

Forensic Analyst Samia Basilious examined the tissues and found that the DNA in the semen came from Pressley or from someone with the same DNA profile as Pressley, which occurs in one of every 11,000 African–Americans. (Basilious: 420–26).

Pressley's mother testified that she had been home the entire day on September 2 and had not seen Gurley enter the house. (Shirley Pressley: 851–52, 858–858A). Two witnesses testified that they had seen Pressley at the street fair that afternoon. (Moy: 686–91; Brown 753–62). The defense also offered a medical expert who disagreed with Basilious' conclusions because of possible contamination of the DNA sample and noted that 21,000 males could have the same DNA profile as the donor of the sperm on the tissues. (Shields: 647, 654–55).

Bogan was called as a witness to testify that, as soon as Pressley's mother learned of the planned charges regarding the September 2 incident, Pressley's mother told Bogan that she had been home the entire day and that she wanted to testify before the grand jury. (Bogan: 900–03). He also testified that there was no opportunity for Pressley to have spoken with his parents about the new charge. (Tr. 900). The calling of Bogan as a witness occurred as a result of the cross-examination of Pressley's mother, during which the Assistant District Attorney had asked if she had told Detective Aponte about Pressley's whereabouts when she learned he was being charged with the September incident. (S. Pressley: 863–64; see Tr. 876–891).

Terry Pressley did not testify.

During the trial, Pressley's grand jury testimony was admitted into evidence and the prosecution referred to it in her sum-

mation, noting that "you can consider the fact that the defendant didn't tell the truth in the grand jury as additional evidence of his guilt." (Tr. 1002). The prosecutor argued that much of Pressley's testimony to the grand jury had been contradicted by the evidence at trial. (Tr. 1002–1010).

During deliberations the petit jury requested that Pressley's grand jury testimony be read to them. (Tr. 1059). On February 12, 1997, after three days of deliberations, the jury found Pressley guilty of one count each of first-degree rape, first-degree sodomy and first-degree sexual abuse. *See* Resp. Mem. at 5; Pet. Mem. at 18–19. After his conviction, Pressley retained his current counsel, Herald Price Fahringer, to prosecute his appeal.

On June 3, 1997, Pressley moved to set aside the verdict pursuant to CPL §§ 330.30, 330.40, and 330.50, on the grounds that "the misjoinder of charges relating to two separate incidents irredeemably prejudiced him at trial, that the defendant was denied effective assistance of counsel [in front of the grand jury and at trial] and that the verdict was against the weight of the evidence." Notice of Motion, dated June 3, 1997 (reproduced as Answer, Ex. B). Pressley also argued that the prosecution improperly questioned him before the grand jury about his previous convictions and his failure to speak to Detective Aponte. Fahringer Aff. at 7–8. On June 27, 1997, the Court denied the misjoinder argument on the merits, but requested briefs on the issue of whether Bogan's alleged failure to advise Pressley about the charges relating to the September incident and his failure to prepare him for cross-examination on his prior criminal record constituted ineffective assistance of counsel. *See* Transcript of June 27, 1997, at 20–21, 34–35. After receiving the briefs, the court *sua sponte* raised the

issue of whether the application was properly before the court under CPL § 330. *See* Transcript of July 31, 1997, at 15–17. On August 11, 1997, the Court found the § 330 motion to be an inappropriate mechanism to assert the ineffective assistance claim, but granted leave to Pressley to reassert his claims under CPL § 440. *See* Transcript of August 11, 1997, at 6–7.

On July 31, 1997, prior to sentencing, Pressley challenged the retroactive application of § 70.04 of the Penal Law, which mandates certain minimum sentences for second violent felony offenders. *See* Sentencing Memorandum, dated July 31, 1997 (reproduced at A. 70–116), at 21–22 (A.99–100). On August 15, 1997, the court concluded that Pressley was a second violent felony offender and sentenced him to an aggregate term of 19 to 26 years. Transcript of Sentencing, August 15, 1997, at 6–7.

On September 3, 1997, Pressley moved to vacate the judgment and set aside the sentence pursuant to CPL § 440.10. *See* Notice of Motion, dated September 3, 1997 (reproduced as Answer, Ex. G). In this motion, Pressley contended that the prosecution "gave him inadequate notice that an additional rape charge was to be presented to the grand jury, that his counsel was ineffective in not asking for additional time to prepare his client and investigate upon learning of the additional charge and that his counsel was ineffective in not informing him that he could be impeached with his prior record when he testified before the grand jury." *See* Decision and Order, dated February 9, 1998 (reproduced as Answer, Ex. I), at 1. He also argued that Gardner's questioning of him about his failure to speak to the police prior to his arrest constituted a due process violation. *Id.* at n. 1. The Supreme Court held an evidentiary hearing, during which it admitted Bogan's trial testimony that he did not

learn of the September charges until the day Pressley testified before the grand jury. Transcript of October 3, 1997, at 116–17. (Bogan had died prior to the submission of the motion.) Gardner testified that she told Bogan of the additional charges on February 16, 1996. Transcript of October 17, 1997, at 34.

In its ruling on the section 440.10 motion, the Court found that the prosecution informed Bogan on February 16 of the September charge. In addition, the Court ruled that the People were under no obligation to provide notice of the September charge, and that the notice given by the People, if notice were required, was reasonable. The court also concluded that Pressley's counsel was not constitutionally ineffective for failing to investigate the case before placing Pressley before the grand jury. Decision and Order, dated February 9, 1998 at 2–3. The court explained:

> At trial, the people presented DNA evidence that the Defendant's semen was on a napkin recovered from the complainant's workplace and contrasted that with the Defendant's grand-jury denial of any sexual contact with the complainant. Although the claim in the grand jury that he had no contact with the complainant "locked in" his story and rendered a later defense of consent ineffectual, his counsel cannot be said to be ineffective for not preventing his client from testifying. The DNA tests were not completed until months after the grand jury presentation. In retrospect the Defendant's grand jury testimony was convincingly refuted. But counsel had no way of foreseeing that the defendant's version of events would be contradicted by scientific evidence.

*Id.* at 3.

## C. *Direct Appeal*

Pressley appealed both his conviction and the denial of his section 440.10 motion to the Appellate Division, First Department, raising the following arguments: (1) that notification of the additional charge moments before his grand jury testimony was insufficient to allow him reasonable time to adequately prepare to meet those charges, (2) that he was denied meaningful representation because Bogan allowed him to testify before the grand jury without undertaking any investigation into the new allegations of rape, (3) that the prosecutor violated Pressley's privilege against self-incrimination when she interrogated him before the grand jury regarding his failure to speak with the police during the course of their investigation, (4) that he was denied due process due to the misjoinder of charges relating to two separate incidents, (5) that the mandatory sentencing provisions of Penal Law § 70.04 were unconstitutionally applied to him, and (6) that the sentence imposed was illegal because § 70.04 was enacted after Pressley's prior felony conviction and because it had not been established that he engaged in violent conduct during the predicate felony. *See* Brief for Defendant–Appellant, dated October 7, 1998, reproduced as Answer, Ex. K.

On March 25, 1999, the Appellate Division affirmed the judgment of the Supreme Court. *See People v. Pressley*, 259 A.D.2d 416, 688 N.Y.S.2d 20 (1st Dep't 1999). The court found "no basis to disturb the factual determination of the [§ 440 court] that [Pressley] was informed of the additional charges being considered by the Grand Jury on February 16, 1996." The court also found the prosecutor was under no duty to advise Pressley of these charges. In addition, the court held that Pressley "received meaningful representation at the Grand Jury stage of proceedings" and that the sentence was properly imposed. Finally, the court found that

Pressley's remaining claims were unpreserved and the court declined to review them. Were it to review these claims, the court noted, it would reject them. *Id.*

Pressley sought leave to appeal to the Court of Appeals and on June 28, 1999, Judge Joseph W. Bellacosa granted leave. *See* Order Granting Leave, dated June 28, 1999 (reproduced as Answer, Ex. N). In his brief to the Court of Appeals, Pressley raised all of the arguments he made to the Appellate Division. *See* Brief for Defendant–Appellant, dated September 20, 1999, reproduced as Answer, Ex. O.

On April 6, 2000, the Court of Appeals affirmed the order of the Appellate Division. *People v. Pressley*, 94 N.Y.2d 935, 708 N.Y.S.2d 32, 729 N.E.2d 689. The court held that the issue of a violation of CPL § 190.50 was unpreserved. The court also found that Pressley received meaningful representation before the grand jury and at trial. Finally, the court stated that Pressley's "remaining claims are either unpreserved, or to the extent that they are preserved ... are without merit." 94 N.Y.2d at 937, 708 N.Y.S.2d 32, 729 N.E.2d 689.

### D. *Instant Petition*

Pressley filed the instant petition on June 26, 2001, alleging four grounds for relief: (1) his Fifth and Sixth Amendment rights were violated when the prosecutor confronted Pressley with additional charges during his appearance before the grand jury; (2) he was denied effective assistance of counsel because of the circumstances surrounding the grand jury appearance; (3) the prosecutor violated Pressley's privilege against self-incrimination when she questioned him before the grand jury regarding his decision not to speak with the police during their investigation; and (4) Pressley's aggregate sentence of 19–26 years constituted cruel and unusual punishment and was imposed without proper authorization or jurisdiction. *See* Petition Under 28 U.S.C. § 2254, ("Petition") at 8–9; Pet. Mem. at 35–61. Pressley's petition also requests a hearing on his claims or, in the alternative, that the Court conduct a "de novo" review of the record made at the section 440.10 hearing. *See* Pet. Mem. at 62–63.

## II. *DISCUSSION*

### A. *Applicable Law*

Habeas corpus relief is available under 28 U.S.C. § 2254(a) only if the petitioner is in custody in violation of the Constitution or laws or treaties of the United States. In addition, the petitioner must have exhausted the remedies available in the state courts or there must be either an absence of available state corrective process or circumstances rendering such process ineffective to protect the petitioner's rights. 28 U.S.C. § 2254(b). To satisfy the exhaustion requirement, a petitioner must present the substance of the same federal constitutional claim raised in his federal petition to the highest court of the relevant state. *See, e.g., Aparicio v. Artuz,* 269 F.3d 78, 89–90 (2d Cir.2001).

In addition, under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, federal courts must defer to the state court's determination of a habeas petitioner's federal claims on the merits. A state court ruling is "on the merits" even where the ruling does not discuss the federal claim or any federal law in its opinion adjudicating the state law conviction. *Sellan v. Kuhlman,* 261 F.3d 303, 311 (2d Cir.2001) ("Nothing in the phrase 'adjudicated on the merits' requires the state court to have explained its reasoning process."). All that is required to trigger the statutory standard of review is the issu-

ance of "a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." *Id.*

Where there has been a ruling on the merits, habeas relief may not be granted unless the state court decision was (1) "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254(d). A state court decision is contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court precedent or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives" at a different result. *Williams v. Taylor,* 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court decision involves an "unreasonable application" of Supreme Court precedent if it unreasonably applies a governing legal rule to the particular facts of a case. *Id.* at 409, 120 S.Ct. 1495. Thus, the federal court must decide "whether the state court's application of clearly established federal law was objectively unreasonable," not whether the application was simply incorrect. *Id.* at 409–10, 120 S.Ct. 1495.

Bearing these principles in mind, each of the four grounds raised in Pressley's petition is discussed in turn.

## B. *Ground One: The Fifth and Sixth Amendment Notice Claims*

### 1. *Exhaustion*

■ Pressley claims that he was denied his Fifth Amendment right to due process and his Sixth Amendment right to notice of charges against him because the prosecution "ambushed [Pressley], who was testifying before the grand jury, with additional unknown charges." Pet. Mem. at 35. The respondent counters that this claim is unexhausted because "[a]t no time in the New York Court of Appeals . . . did petitioner assert denial of any federal constitutional right arising from the conduct of the grand jury proceeding." Resp. Mem. at 9.

The Supreme Court has held that although a petitioner need not have cited "book and verse on the federal constitution," the petitioner must nonetheless articulate the "substantial equivalent" of the federal habeas claim before the State court. *Picard v. Connor,* 404 U.S. 270, 278, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971) (internal quotations and citations omitted). The Second Circuit has held that the petitioner can accomplish this by:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Daye v. Attorney General of the State of New York,* 696 F.2d 186, 194 (2d Cir.1982) (en banc).

Here, Pressley's brief to the Court of Appeals relied on no federal cases at all. Nor did he rely on state cases employing a federal constitutional analysis of the issues he presented in Ground One. Instead, the brief made extensive reference to the state statutory scheme regarding the presentation of evidence to the grand jury and occasionally referred, within the context of this discussion, to "grand jury procedural

due process". *See, e.g.,* Brief for Defendant–Appellant to the Court of Appeals, dated September 20, 1999 ("App.Br.") (reproduced as Answer, Ex. O) at 38. But the use of this unexplained term in the context of a discussion that focuses exclusively on state procedural requirements could not have alerted the New York State courts that a federal constitutional claim was being presented. The term does not call to mind a specific right protected by the federal Constitution. Nor do the facts of Pressley's case fit within the mainstream of constitutional litigation. *Daye,* 696 F.2d at 194.[2]

Because Pressley failed to raise the federal issue before the Court of Appeals, Pressley no longer has the right to raise his claim under New York law either on direct appeal, *see* N.Y.Court Rules § 500.10(a), or on collateral review. *See* CPL § 440.10(2)(c). In other words, Pressley has no further recourse in state court. *See Washington v. James,* 996 F.2d 1442, 1447 (2d Cir.1993), *cert. denied,* 510 U.S. 1078, 114 S.Ct. 895, 127 L.Ed.2d 87 (1994). Thus, his claim is procedurally defaulted and he cannot obtain a writ of habeas corpus unless he can demonstrate cause and prejudice for the default. *Id.*

(citing *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)). Pressley offers no such cause. Nor has he made a showing of a fundamental miscarriage of justice for the simple reason that such a miscarriage occurs "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). The record contains no evidence of Pressley's "actual innocence."

### 2. *Procedural Default*

Even if it could be said that Pressley had presented his claim to the Court of Appeals in federal constitutional terms, the respondent nonetheless argues that Pressley's Ground One claim cannot be considered by this Court because it was decided on an adequate and independent state ground. Resp. Mem. at 9–10. The Court of Appeals refused to consider Pressley's claim regarding the failure to give him notice of the grand jury charges on the ground that he had failed to raise them timely before the trial court. *People v. Pressley,* 94 N.Y.2d at 936–37, 708 N.Y.S.2d 32, 729 N.E.2d 689.

---

**2.** In the listing of questions presented, Pressley did refer to the "federal due process clause[ ]", App. Br. at 5, in regard to his argument that he did not receive sufficient notice of the charges before the grand jury. However, this lone and completely unexplained reference occurs in a brief that is otherwise devoted purely to state law authorities in support of the defendant's argument and that cites exclusively state law cases. Thus, this passing reference simply could not have alerted the Court of Appeals that a federal issue was being raised with respect to the grand jury claims. The Court of Appeals would be even less likely to be alerted that a federal claim was being raised because Pressley's brief was counseled (rather than *pro se* ) and thus it would be expected that counsel would make explicit arguments in support of

a federal claim if such a claim were being addressed to the court.

The fact that Pressley was counseled and the fact that the brief in support of the relevant grand jury notice argument relied exclusively on state procedural law distinguishes Pressley's case from cases such as *Reid v. Senkowski,* 961 F.2d 374, 376 (2d Cir.1992) (per curiam) and *Jones v. Vacco,* 126 F.3d 408, 413–14 (2d Cir.1997). Because the phrase "federal due process clause" was not even contained in the argument section and was the sole reference to federal due process with respect to the grand jury notice argument in the defendant's 107 page brief, the Court of Appeals would have had no reason to believe that it was being asked to address this federal issue.

The Supreme Court has made clear that the "adequate and independent state ground doctrine applies on federal habeas" review such that "an adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." *Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (citations & internal quotations omitted); *accord Coleman v. Thompson,* 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Jones v. Vacco,* 126 F.3d 408, 415 (2d Cir.1997). While Pressley argues that the state procedural bar should not have been applied because he raised his arguments in post-trial motions, Reply Memorandum of Law in Support of Petition Under 28 U.S.C. § 2254 ("Reply Mem.") at 4–5, it is not for this Court "to second-guess a state court's determination as to which there is a fair and substantial basis in state law." *Garcia v. Lewis,* 188 F.3d 71, 82 (2d Cir.1999); *Maula v. Freck-leton,* 972 F.2d 27, 28 (2d Cir.1992) ("Under established federal habeas principles, we must defer to the state court's determination of [an] issue of state procedural law.") (citation omitted), *cert. denied,* 507 U.S. 910, 113 S.Ct. 1255, 122 L.Ed.2d 653 (1993); *Peterson v. Scully,* 896 F.2d 661, 663 (2d Cir.) ("If a state appellate court refuses to review the merits of a criminal defendant's claim of constitutional error because of his failure to comply with . . . a 'contemporaneous objection' rule, a federal court generally may not consider the merits of the constitutional claim on habeas corpus review.") (citation omitted), *cert. denied,* 497 U.S. 1038, 110 S.Ct. 3301, 111 L.Ed.2d 810 (1990).

Pressley argues, however, that "the ineffectiveness of counsel both at the grand jury level and at trial constituted cause for any failure to promptly present the constitutional claims to the trial judge." Reply Mem. at 8. This claim is essentially congruent with the claim that is being raised in Ground Two of the petition, however. As discussed in Section II.C below, it must be rejected because Pressley has not made out a claim of ineffective assistance of counsel.

### 3. *The Merits*

Even if Pressley had properly presented his Ground One claim and it had not been decided on an adequate and independent state ground, it would still have to be denied on the merits. The Court of Appeals made no determination "on the merits" to which the Court must give deference under 28 U.S.C. § 2254(d) and, accordingly, the pre-AEDPA *de novo* standard of review apply. *See Brown v. Artuz,* 283 F.3d 492, 498 (2d Cir.2002). The factual determinations by a state court, however, are entitled to deference under 28 U.S.C. § 2254(e)(1), which provides that "a determination of a factual issue made by a State court shall be presumed to be correct." That provision requires such deference even in the absence of a determination on the merits by a state court. The statute further provides that the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *accord Brown,* 283 F.3d at 498.

■ Discussion of Pressley's claim must start with the question of how much notice Bogan was given of the prosecutor's intention to question Pressley about the September incident. This topic was a subject of the hearing on the section 440.10 motion, which included the admission of testimony that Bogan had given during the

trial. The Supreme Court's decision on that motion expressly found that the People informed Pressley's counsel of the new charge on February 16, 1996 (the Friday before Pressley's grand jury testimony on Tuesday, February 20, 1996). The Appellate Division affirmed this finding. 259 A.D.2d at 416, 688 N.Y.S.2d 20. Pressley has provided some evidence that this finding is incorrect because Bogan testified unequivocally that he was not told of the new charge on the 16th but rather on the date of Pressley's testimony, Tr. at 898, 904 (A.163, 169), which was the 20th. The prosecutor, however, testified that she informed Bogan of the additional charge on the 16th. Transcript of October 17, 1997, at 34. Under these circumstances, the Court cannot say that Pressley has rebutted by "clear and convincing" evidence the statutory presumption that the state court's finding is correct. As a result, the state court's finding must be accepted. 28 U.S.C. § 2254(e)(1). Four days advance notice must be considered sufficient under any reading of the due process clause to allow for the preparation of grand jury testimony, even if those four days largely include a holiday weekend.

Yet, even if notice had been given only on the day of the proceeding, Pressley does not cite, nor is the Court aware, of any federal constitutional principle that requires the prosecution to provide notice of charges to a defendant before he or she decides whether to testify in a grand jury. Pressley relies on the Sixth Amendment but the pertinent portion provides that in "all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, ... and to be informed of the nature and cause of the accusation." Thus, the notice provision of the Sixth Amendment applies to trial, not to grand jury, proceedings and is of no relevance to Pressley's claim. Nor can the grand jury process be considered part of the trial process for purposes of the Sixth Amendment because a grand jury hearing is essentially an investigative proceeding that is functionally independent from the judicial branch. See United States v. Williams, 504 U.S. 36, 48, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992). Indeed, there is no Constitutional right to appear before a grand jury, see, e.g., United States v. Ruiz, 894 F.2d 501, 505 (2d Cir.1990), nor to have exculpatory evidence presented, Williams, 504 U.S. at 52, 112 S.Ct. 1735. Thus, the Sixth Amendment right to be informed of the nature and cause of the criminal accusation is not implicated in a grand jury proceeding.

Pressley's due process claim under the Fifth Amendment is equally unavailing. Once again, Pressley does not cite to nor is the Court aware of any federal due process requirement that governs notice that must be given to witnesses before the grand jury. This is hardly surprising as there is no right to appear at all before a grand jury. See Ruiz, 894 F.2d at 505. The Fifth Amendment places virtually no restrictions on what occurs before the grand jury. The Supreme Court has held that

> An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more.

Costello v. United States, 350 U.S. 359, 363, 76 S.Ct. 406, 100 L.Ed. 397 (1956); accord United States v. Contreras, 776 F.2d 51, 54 (2d Cir.1985).

Pressley claims that "common sense and due process dictate that a defendant who has decided to testify before a grand jury must know of all the charges with which he will be confronted before testifying." Pet. Mem. at 36. Putting aside the fact that

Pressley was indeed notified of the charges prior to his actual testimony, Pressley's argument is an *ipse dixit* and does not provide a basis for concluding that the Fifth Amendment imposes any requirement of advance notice. The Supreme Court has held that a grand jury need not "identify the offender it suspects, or even 'the precise nature of the offense' it is investigating." *Williams*, 504 U.S. at 48, 112 S.Ct. 1735 (citation omitted). There is no reason why a defendant's decision to testify before that grand jury should accord that defendant additional rights that would not have existed otherwise.

Pressley focuses on the fact that the grand jury testimony "played a critical role in his conviction." Pet. Mem. at 37. Accepting his premise as correct, the significance of his grand jury testimony turned on his apparent concession that he perjured himself before the grand jury about the September incident (despite being given explicit warnings that his testimony could be used against him, *see* GJ Test. at 34 (A.173)) and on the fact that his grand jury testimony was later discredited by Gurley's testimony and the DNA evidence. But there was nothing unfair about the process Pressley was subjected to. He was informed of all the charges prior to actually entering the grand jury room to testify; he was informed that he did not have to testify; he was allowed to appear with counsel before the grand jury; he declined additional time to consult with his counsel; he was explicitly informed that his statements could be used against him at trial and he voluntarily testified after being so informed. Perjury during testimony before a grand jury that is material to the proceeding is a crime in and of itself, *see* Penal Law § 210.15, that cannot be excused because a defendant vainly hoped to use it to his advantage. To the extent Pressley argues that his false testimony before the grand jury was the first step in a chain of events that resulted in his ultimate conviction at trial, his own perjury was the supervening cause of that chain of events, not the lack of a fair process.

For these reasons, Pressley's due process claim fails on the merits.

### C. Ground Two: Ineffective Assistance of Counsel Claim

Pressley also argues his Sixth Amendment right to counsel was violated because Bogan, his counsel at the grand jury proceeding, was unconstitutionally ineffective. Pet. Mem. at 38–51.

The "right to counsel [under the Sixth Amendment] is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (citing *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)). The purpose of this right is "simply to ensure that criminal defendants receive a fair trial." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. A criminal defendant's counsel's performance is constitutionally ineffective if (1) counsel's performance was "deficient," meaning counsel made "errors so serious" that his or her conduct "fell below an objective standard of reasonableness"; and (2) there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, 466 U.S. at 687–88, 690, 694, 104 S.Ct. 2052; *accord United States v. Guevara*, 277 F.3d 111, 127 (2d Cir.2001), *amended on other grounds*, 298 F.3d 124 (2d Cir. 2002); *Sellan v. Kuhlman*, 261 F.3d 303, 315 (2d Cir.2001). "In gauging deficiency, the court must be 'highly deferential,' must 'consider[ ] all the circumstances,' must make 'every effort . . . to eliminate the

distorting effects of hindsight,' and must operate with a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Lindstadt v. Keane,* 239 F.3d 191, 199 (2d Cir.2001) (quoting *Strickland,* 466 U.S. at 688–89, 104 S.Ct. 2052). In addition, the Court must " 'evaluate the conduct from counsel's perspective at the time.'" *Bell v. Cone,* 535 U.S. 685, 122 S.Ct. 1843, 1852, 152 L.Ed.2d 914 (2002) (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052).

■ Pressley claims that Bogan's conduct was unreasonable because he "allow[ed] [Pressley] to go before the grand jury and give sworn testimony" about the September incident "without taking any opportunity to make any investigation of the facts or the law" or "stopping to consider the legal and factual consequences of giving 'ad lib' testimony." Pet. Mem. at 43. The crux of Pressley's argument is that by "allowing" him to testify that he was not with Gurley on the day in question, Bogan locked Pressley into a defense that could not be squared with the evidence presented at trial. Specifically, Pressley's grand jury testimony that he had not been with Gurley on the day of the September incident was contradicted by Gurley's testimony describing the inside of Pressley's house. According to Pressley, a competent attorney in Bogan's situation would have either not let the client testify at all or obtained an adjournment "to consider the additional charges." *Id.* at 43–44.

Pressley's argument is unavailing for many reasons. As an initial matter, it is difficult to evaluate Pressley's argument in the absence of a complete record as to what transpired between him and Bogan. The record reflects that Bogan consulted with Pressley to see if he still wanted to testify before the grand jury after learning that the District Attorney planned to present the September incident. Tr. 899 (A.164). But the only information offered by Pressley about this conversation (contained in an affidavit) gives no description of what Pressley told Bogan prior to the grand jury testimony about his own involvement in the incident. *See* Affidavit of Terry Alexander Pressley, dated June 27, 1997 (reproduced in Answer, Ex. E). Pressley did not testify at the section 440 hearing. Thus, for example, we do not know if Pressley informed Bogan that he planned to perjure himself. If he did so inform Bogan, an investigation was certainly unnecessary.[3]

If on the other hand Pressley lied to Bogan about his whereabouts on September 2, Pressley's argument rests on the proposition that it is unreasonable for a lawyer to trust the accuracy of his or her client's statements without first investigat-

---

**3.** While Pressley's father's testimony at the section 440 hearing is based only on hearsay and is not entirely clear, he appears to suggest that Pressley in fact conveyed the same false story to Bogan regarding his activities on September 2 that he presented to the grand jury.

> Q. Did Mr. Bogan say anything to you as to what he had said to Terry [Pressley] concerning what position he should take before the Grand Jury?
> A. He told Terry just to deny and tell his whereabouts.
> * * *

> Q. Did you ask Mr Bogan at all about whether Terry had been prepared to appear before the Grand Jury?
> A. Yes, I did.
> Q. What did you say to him?
> A. I asked him whether he had any preparation and, you know, he knew anything, he said, no, *Terry told him of his whereabouts,* that was it.

Transcript of October 3, 1997, at 58–60 (emphasis added). Pressley's father was not present during any conversations between his son and Bogan on either February 16 or February 20. *Id.* at 71–72.

ing those statements. The Court rejects this proposition because the attorney-client relationship is premised on mutual trust. To promote this trust, the law permits a criminal defendant to honestly disclose even inculpatory facts about past events to his or her attorney without fear of any adverse consequences. Indeed, it is to support this relationship that the courts have created a virtually absolute attorney-client privilege. *See, e.g., Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). Contrary to the premise of Pressley's argument, attorneys are not obligated to distrust their clients and conduct independent investigations of their clients' statements before they may reasonably rely on their accuracy.

Second, given the short time that is typically given between notifying a potential defendant of a grand jury investigation and the voting of an indictment (often in New York State practice a matter of a few days and sometimes less), it would usually be impossible for a lawyer to conduct an independent investigation of the facts underlying the crime. Thus, Pressley's argument would put many attorneys in the situation of routinely being required to advise against testifying in the grand jury. This argument may have some surface appeal as it is extremely unlikely that an attorney could be found ineffective for advising a defendant to *refuse* to testify in the grand jury. But this is only because there is normally no greater likelihood of conviction at trial in the absence of a defendant's testimony before the grand jury.

Such an argument, however, ignores the strong interest many defendants harbor to make their case before the grand jury in order to avoid the embarrassment an indictment will bring or, more commonly, the continued incarceration that often results. While Pressley repeatedly asserts that Bogan should not have "allowed" him

to testify, it was in fact Pressley's decision whether to testify before the grand jury. *Cf. Chang v. United States,* 250 F.3d 79, 82 (2d Cir.2001) (decision to testify at trial is personal to the defendant and may not be waived by attorney). An attorney should not be considered to have acted below "an objective standard of reasonableness" simply for acceding—in the absence of such an investigation—to a defendant's wish to vindicate himself.

Pressley suggests that Bogan should have "obtain[ed] an adjournment" of the grand jury proceedings. Pet. Mem. at 43. Because Bogan was entitled to trust Pressley's version of the events, however, Bogan would have had no reason to believe such an adjournment was necessary. In addition, Pressley fails to cite any provision or case law (or even practice in the District Attorney's office) that would necessarily have permitted Bogan to obtain such an adjournment had one been requested. As a practical matter, Pressley's only choice might have been either to testify on February 20 or to forgo testifying at all. Again, while it is safer from the lawyer's point of view to counsel a client against testifying before a grand jury, a decision to "allow" a defendant desirous of testifying to do so does not fall outside "the wide range of reasonable professional assistance." *Lindstadt,* 239 F.3d at 199.

Finally, the New York Court of Appeals ruled that Pressley's counsel was constitutionally effective. *Pressley,* 94 N.Y.2d at 937, 708 N.Y.S.2d 32, 729 N.E.2d 689. Therefore, for Pressley's claim to succeed he must show that this decision was not just incorrect, but "objectively unreasonable." *See Bell,* 535 U.S. at ——, 122 S.Ct. at 1852 ("under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. Rather, he must show that the

[state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner.") (citation omitted). Here, Pressley cites no federal case law, and the Court is aware of none, suggesting that a lawyer must conduct an investigation of facts before his or her client testifies before a grand jury. Nor does he cite any Supreme Court authority that even hints at such a result. The Court of Appeals decision thus could not have involved "an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." Accordingly, Pressley's claim of ineffective assistance of counsel fails.

### D. *Ground Three: Self–Incrimination*

■ Pressley also argues that "the prosecutor violated [his] privilege against self-incrimination when she interrogated him before the grand jury that he had declined to speak with the police during the course of their investigation." Pet. Mem. at 52. This claim fails for the simple reason that claims of deficiencies in state grand jury proceedings are not cognizable in a federal habeas corpus review. *See Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989) (citing *United States v. Mechanik*, 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986)); *Mackenzie v. Portuondo*, 208 F.Supp.2d 302, 313 (E.D.N.Y.2002); *Mirrer v. Smyley*, 703 F.Supp. 10, 11–12 (S.D.N.Y.), *aff'd*, 876 F.2d 890 (2d Cir.), *cert. denied*, 493 U.S. 850, 110 S.Ct. 148, 107 L.Ed.2d 106 (1989). As was noted in *Mechanik*,

> [T]he petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt. Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected

with the charging decision was harmless beyond a reasonable doubt.

475 U.S. at 70, 106 S.Ct. 938 (footnote omitted). The defendant's reliance on *United States v. Midland Asphalt Corp.*, 840 F.2d 1040 (2d Cir.1988), *aff'd*, 489 U.S. 794, 109 S.Ct. 1494, 103 L.Ed.2d 879 (1989), *see* Reply Mem. at 15, is misplaced as this case dealt only with the appealability of a motion to dismiss an indictment and in no way narrowed the scope of *Mechanik*.

### E. *Ground Four: Pressley's Sentence*

Pressley also argues that the sentences he received in this matter as a second violent felony offender (concurrent sentences of 7 to 14 years for the rape charge and 2–1/2 to 5 years for the sexual abuse charge to run consecutive to the 12 year sentence for the sodomy charge) violate the Eighth Amendment prohibition of cruel and unusual punishments. Pet. Mem. at 58 61. He claims the sentences are "unconstitutionally disproportionate to the crimes for which he was convicted." *Id.* at 59. The Court of Appeals did not clearly adjudicate this claim on the merits. Accordingly, the Court reviews this claim *de novo. See, e.g., Brown*, 283 F.3d at 498.

Because the Court must grant considerable deference to legislatively mandated terms of imprisonment, successful challenges to sentences will be "exceedingly rare." *Hutto v. Davis*, 454 U.S. 370, 374, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982) (per curiam) (citation omitted); *accord Solem v. Helm*, 463 U.S. 277, 290, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) ("Reviewing courts, of course, should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals."). The Second Circuit has broadly stated that "[n]o federal constitutional is-

sue is presented where ... the sentence is within the range prescribed by state law." *White v. Keane,* 969 F.2d 1381, 1383 (2d Cir.1992) (per curiam) (citation omitted). A court should not defer to a state sentence, however, "in extreme circumstances such as where the punishment is barbaric or vastly disproportionate to the crime committed." *Salcedo v. Artuz,* 107 F.Supp.2d 405, 414 (S.D.N.Y.2000) (citing cases); *accord United States v. Certain Real Property and Premises Known as 38 Whalers Cove Drive, Babylon, N.Y.,* 954 F.2d 29, 38 (2d Cir.1992) ("The Cruel and Unusual Punishment Clause prevents the imposition of a punishment which is 'grossly disproportionate' to the crime committed.") (citation omitted), *cert. denied,* 506 U.S. 815, 113 S.Ct. 55, 121 L.Ed.2d 24 (1992). The Supreme Court has held that, in deciding whether a penalty is grossly disproportionate to the offense, a court should consider "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Solem,* 463 U.S. at 292, 103 S.Ct. 3001; *accord United States v. Bennett,* 252 F.3d 559, 567 (2d Cir.2001), *cert. denied,* 535 U.S. 932, 122 S.Ct. 1307, 152 L.Ed.2d 217 (2002). Nonetheless, "a reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate." *Solem,* 463 U.S. at 290 n. 16, 103 S.Ct. 3001; *accord United States v. Santos,* 64 F.3d 41, 46 (2d Cir.1995), *vacated on other grounds,* 516 U.S. 1156, 116 S.Ct. 1038, 134 L.Ed.2d 186 (1996).

■ Bearing these considerations in mind, the Court cannot conclude that the sentence violated the Eighth Amendment. First, rape, sexual abuse, and forced sodomy are grave crimes warranting a severe punishment. Under such circumstances, an aggregate term of 19 to 26 years for these crimes does not "shock[ ] the collective conscience of society." *United States v. Gonzalez,* 922 F.2d 1044, 1053 (2d Cir.), *cert. denied,* 502 U.S. 1014, 112 S.Ct. 660, 116 L.Ed.2d 751 (1991). Second, other criminals in New York state have received comparable sentences, as reflected in case law rejecting such sentences as cruel and unusual. *See, e.g., Moore v. Irvin,* 908 F.Supp. 200 (N.D.N.Y.1995) (sentences totaling 29–2/3 to 50 years for rape, sodomy and sexual abuse); *People v. Gray,* 288 A.D.2d 897, 732 N.Y.S.2d 384 (4th Dep't 2001) (22 years for rape, sodomy, sexual abuse, and unlawful imprisonment for second violent felony offender), *leave to appeal denied,* 97 N.Y.2d 729, 740 N.Y.S.2d 702, 767 N.E.2d 159 (2002); *People v. Wilson,* 77 A.D.2d 713, 430 N.Y.S.2d 715 (3d Dep't 1980) (7 to 21 years for sodomy). Finally, longer sentences have been upheld for crimes similar to Pressley's in other jurisdictions. *See, e.g., State v. Brown,* 742 So.2d 1051 (La.App.1999) (25 years of hard labor for attempted aggravated rape), *cert. denied,* 760 So.2d 340 (2000); *Kidd v. State,* 793 So.2d 675 (Miss.App.2001) (consecutive prison sentences of 25 years for sexual battery and 30 years for each of two counts of rape); *Sollers v. State,* 664 S.W.2d 726 (Tex.App.1983) (50 year sentence for aggravated rape). Even "severe" penalties that "may be considered cruel" are not necessarily "unusual in the constitutional sense." *Harmelin v. Michigan,* 501 U.S. 957, 994, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (imposition of mandatory life sentence for possession of 650 grams of cocaine not cruel and unusual). In Pressley's case, the sentence he received must also be considered in light of his prior record which includes, among other convictions, a 1989 conviction for Attempted Robbery in the Second Degree, Penal Law § 160.10 (a class C felony) and

a 1993 conviction for Assault in the Third Degree, Penal Law § 120.00 (a class A misdemeanor). Transcript of Sentencing, August 15, 1997, at 6–7. For these reasons, Pressley's sentence was not in violation of the Eighth Amendment.

Pressley also claims that the "the state court lacked the authority and jurisdiction to impose such a severe sentence" because "P.L. § 70.04, which provides for enhanced sentence for second violent felony offenders, was enacted after Terry Pressley's prior felony conviction and where it was not established that he engaged in violent conduct during the predicate felony." Pet. Mem. at 61. To the extent Pressley is claiming a violation of New York law, the state court rejected this challenge because he was sentenced in accordance with § 70.04 and, in any event, this court cannot review this claim because " 'federal habeas corpus relief does not lie for errors of state law.' " *Estelle v. McGuire,* 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (quoting *Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990)); *see* 28 U.S.C. § 2254(a); *Dunnigan v. Keane,* 137 F.3d 117, 125 (2d Cir.), *cert. denied,* 525 U.S. 840, 119 S.Ct. 101, 142 L.Ed.2d 81 (1998). To the extent Pressley challenges the application of Penal Law § 70.04 under the Ex Post Facto clause, his argument is rejected. The Second Circuit has expressly held that Penal Law § 70.04 does not violate the Ex Post Facto clause when applied to a criminal conviction obtained prior to its enactment. *Covington v. Sullivan,* 823 F.2d 37, 39 (2d Cir.1987); *see Gryger v. Burke,* 334 U.S. 728, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948) (rejecting Ex Post Facto challenge to state habitual criminal statute enhancing penalties for future crimes because of prior crimes committed before enactment of the statute).

### F. *Request for Hearing*

■ Finally, Pressley requests a hearing (without specifying what new evidence would be offered at such a hearing) or in the alternative that the Court review "de novo" the record from the CPL § 440.10 hearing. Pet. Mem. at 62–63. 28 U.S.C. § 2254(e)(2) provides in pertinent part that if a habeas petitioner

> has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that (A) the claim relies on . . . a factual predicate that could not have been previously discovered through the exercise of due diligence; and

> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Here, Pressley had the opportunity to develop the factual predicate for all of his claims during his direct appeal and collateral attack in the New York courts. Accordingly, section 2254(e)(2)(A) bars this Court from holding an evidentiary hearing. To the extent that Pressley seeks "de novo" review of the factual findings of the State court, such a request contravenes the requirements of 28 U.S.C. § 2254(e)(1), *see* section II.B.3 *supra,* and his request must be denied.

### III. *CONCLUSION*

Pressley's petition for a writ of habeas corpus should be denied.

### *Notice of Procedure for Filing of Objections to this Report and Recommendation*

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report to file any

written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the undersigned and to the Honorable Richard M. Berman at 40 Centre Street, New York, New York 10007. Any requests for an extension of time to file objections must be directed to Judge Berman. The failure to file timely objections will result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn,* 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

September 10, 2002.